Argued and submitted March 11, 1987, affirmed January 13, 1988

In the Matter of the Compensation of
Mary McFarland, Claimant.

McFARLAND,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 83-06254, WCB 84-02929 & WCB 84-04800;
CA A40544)

748 P2d 150

Merrill Schneider, Portland, argued the cause for petitioner. With him on the brief was Merrill Schneider & Associates, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents SAIF Corporation and Reedwood Extended Care Center. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jas J. Adams, Portland, argued the cause for respondents Senior Services Division and SAIF Corporation. With him on the brief was Acker, Underwood & Smith, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant seeks review of a Workers' Compensation Board order that affirmed the referee's denial of her aggravation and industrial injury claims. We affirm.

Claimant received temporary total disability and temporary partial disability payments for an arm injury incurred while employed by Reedwood Extended Care Center in 1981. She was not awarded any permanent disability benefits. In 1983, she injured her shoulder while employed as a domestic servant at a job that she had obtained through the Senior Services Division of the Department of Human Resources (Division). She filed a claim against Reedwood Extended Care Center, alleging that the 1983 injury was an aggravation of the 1981 injury. In a claim against Division and Ms. Dimery, the elderly woman for whom she was caring, she alleged that the 1983 injury was a new injury. SAIF, insurer for Reedwood and Division, denied the claims. After a hearing, the referee found that the medical evidence did not support the claim for aggravation. Her claims against Division and Dimery[1] were denied on the ground that she was not a subject worker and that the Division and Dimery were not subject employers. The Board affirmed the referee.

■ The initial issue is whether the 1983 injury was an aggravation or a new injury. Reedwood and SAIF contend that the 1983 injury could not have been an aggravation, because it involved her shoulder, whereas the 1981 injury involved only the elbow. Claimant asserts that the 1981 injury involved the right arm, elbow and shoulder. Although there is some evidence in the record that there was shoulder involvement in 1981,[2] we conclude that the medical evidence does not support

---

[1] Dimery is deceased and has been dismissed as a party.

[2] In his chart notes, Dr. Harris referred to a sprain of the right arm and shoulder in October, 1981, but diagnosed only sprains of the right arm. In November, 1981, he noted some aching in her right arm and shoulder, a sprain of the trapezius and tenderness over the supraspinatus tendon and diagnosed tendonitis and a rotator cuff sprain. When Dr. Puziss examined claimant in September, 1981, he found mild tenderness "over the supraspinatus tendon, deep to deltoid." However, he also found "full active range of motion of both shoulders" and "no tenderness about the shoulder directly." He diagnosed "obscure pain, right volar forearm." The claim form filed by claimant, the initial medical report filed by Harris with the Workers' Compensation Department and the first opinion and order referred to the 1981 injury as only an elbow injury.

claimant's contention that the 1983 injury was an aggravation.

Two doctors, both orthopedists, concluded that the 1983 injury was not an aggravation. Harris, claimant's treating physician, referred her to Achterman, an orthopedist, who concluded that she had sustained a new injury in 1983, rather than an aggravation of her previous injury. Dr. Puziss, an orthopedist who had also examined claimant after the 1981 injury, described the 1983 incident and injury:

"[Claimant] was working in a private home 'for the state' and was taking care of a 93 year-old blind, disabled patient and states that when she lifted her, about two months ago, she had been working there about five weeks. This patient weighed about 175 pounds and [claimant] sustained pain about her right biceps area. This pain was causing her to awaken every night. She could not sleep and was very tense. She has not worked since the injury. Initially she had felt pain for about one to three days, worsening over the right shoulder and trapezius area, radiating to the biceps.

"She has had problems with her right upper extremity ever since this time."

He diagnosed right biceps tendonitis and right supraspinatus tendonitis, stating that she had sustained a lifting injury to the right shoulder but that it was open to question as to whether it was an aggravation of a previous tendonitis. He later clarified his diagnosis:

"It appears that [claimant's] lifting injury sustained as a nurse * * * was the material contributing cause of Ms. McFarland's recent right biceps and supraspinatus tendinitis. You will recall that [claimant] had pain in the right forearm before. This is not the same injury and without any information to the contrary, I can only assume that [her] present complaints are related to the above injury of sometime in March, 1983."

On the other hand, Harris diagnosed an aggravation of her right arm tendonitis and concluded that the 1983 injury was an aggravation of the preexisting tendonitis of her arm. Similarly, Dr. McCaffrey, a chiropractor who had examined claimant after the 1983 incident, concluded that the 1983 injury was "directly related to that injury incurred while she was working at the Reedwood Care Center in 1981."

On *de novo* review, we find the evidence presented by

the orthopedic specialists, Achterman and Puziss, persuasive and conclude that the 1983 injury was not related to the 1981 injury. It follows that claimant did not sustain an aggravation of the 1981 injury.

■     The next inquiry is whether the 1983 injury is compensable as a new injury. ORS 656.027(1)[3] excludes domestic servants from workers' compensation coverage. A worker hired to take care of a person is engaged in domestic service, and the fact that she was certified as a nurse's aide does not change her status as a domestic servant. *Gunter v. Mersereau,* 7 Or App 470, 491 P2d 1205 (1971). Her duties included meal preparation, washing dishes, feeding and bathing Dimery and turning her in her bed every two hours. The duties are those of a domestic servant.

Additionally, *former* ORS 411.590[4] provided that domestic servants of persons receiving public assistance from Division were not subject workers under ORS 656.027 even if the worker was paid by Division rather than the person for whom services were performed. Here, claimant was performing the tasks of a domestic servant and was paid through Division.

■     We conclude that the Board did not err in holding that Division and Dimery were not subject employers and that claimant was not a subject worker. Her claim for a new injury

---

[3] *Former* ORS 656.027 provided, in part:

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"(1) A worker employed as a domestic servant in or about a private home. For the purposes of this subsection 'domestic servant' means any worker engaged in household domestic service."

[4] ORS 411.590 provides:

"A person who is employed as a housekeeper, homemaker or otherwise as a domestic servant in the house of a recipient of public assistance or services, whose compensation is paid in whole or in part by the Adult and Family Services Division, the Senior Services Division or the Children's Services Division and is not otherwise employed by the division, shall not for any purposes be deemed to be an employe of the State of Oregon whether or not the division selects the person for employment or exercises any direction or control over the person's employment. Such person shall be deemed to be a nonsubject worker under ORS 656.027."

The statute was amended by Or Laws 1987, ch 780, § 1.

from the 1983 incident was not covered by the Workers' Compensation laws and was properly denied.

Affirmed.